41061. HEWITT CONTRACTING COMPANY v. BRIDGEBORO LIME & STONE COMPANY, INC.

DECIDED JANUARY 27, 1965—REHEARING DENIED MARCH 4, 1965.

*Smith, Gardner, Kelley & Wiggins, Fred E. Bartlett, Jr.,* for plaintiff in error.

*Whelchel & Whelchel, Hoyt H. Whelchel, Jr.,* contra.

FELTON, Chief Judge. ■ Following are relevant provisions of the contract: "(2) The *buyer agrees to pay monthly* for all No. 467 stone crushed by the seller at $2.15 per ton until this order of approximately 36,000 tons of stone is furnished. It is agreeable for the buyer to stockpile 80% of the aggregate at one time and complete the hauling when it can be determined if there will be an underrun; however, it is understood that all coarse aggregate used in the soil bound macadam base on this project will be bought from [us]. (2) The seller hereby grants to the buyer a discount of $0.05 per ton from the purchase price *for full and complete payment monthly of our invoices based on the amount of stone supplied each month.* . . (5) Should the buyer for any reason fail to haul the No. 467 stone from the plant, as it is crushed, then the seller may stockpile this stone

and invoice the buyer at estimated weights based on the tonnage production of the plant. In the final settlement, these estimated weights will be adjusted up or down, when hauling begins and the stone is weighted [sic]. *Invoices for any No. 467 stone not hauled but stockpiled at the quarry are due and payable in full monthly.* It is agreed that your company [the plaintiff] will receive all of the No. 467's crushed during the time you are stockpiling. The day we will begin crushing for you will be determined by you and will be based upon your obtaining a plant site which will be no later than May 15, 1961. (6) Paragraph 2 above is based on the stockpiled material meeting the Georgia Highway Department's requirements for No. 467's." (Emphasis supplied.)

The italicized provisions above, properly construed, would authorize the finding that the agreement was that the plaintiff-buyer was to make full and complete payment monthly of the defendant-seller's monthly invoices based on the amount of No. 467 stone crushed by the defendant during the period covered by the invoices, whether or not the plaintiff hauled the crushed stone from the defendant's quarry, for which monthly payment the plaintiff was granted a discount. Although the petition alleges that the plaintiff made payments on August 4 and 17 and September 18 in 1961 and on May 15, 1962, it does not allege the dates of the defendant's invoices. Construing the petition most strongly against the pleader, it is assumed that the plaintiff was billed monthly, as agreed, during the period beginning on May 15, 1961, the date the defendant commenced stockpiling, and ending sometime during or after the month of August, 1961, after which month it is alleged that no more stone was stockpiled by the defendant. From the date on which the defendant commenced stockpiling to the date of the plaintiff's first payment was approximately 2½ months, during which time it must be assumed that the plaintiff received two monthly invoices. The plaintiff's failure to pay these invoices monthly as it had contracted could be found to be a breach of its contract. This breach could be found to have been waived by the defendant, however, by its acceptance of the first late payment, as well as the subsequent payments, and by its continuing to al-

low the plaintiff to haul the crushed stone from its premises, even though it had not been paid for. *Code* § 20-116; *Powell v. Mars Oil Co.,* 214 Ga. 710 (107 SE2d 208).

The defendant's refusal to give the State Highway Department the requested guaranty was not a breach of its contract for the reason that the defendant, as a stranger to the contract for paving between the plaintiff and the Highway Department, could not be required to guarantee its products just because they were to be used in the performance of the paving contract. The defendant's only obligation concerning the quality of the product rested on the contract provision (#6) that "[p]aragraph 2 above is based on the stockpiled material meeting the Georgia Highway Department's requirements for the No. 467's," and this obligation was to the plaintiff, with whom it had contracted.

The plaintiff could be found to have breached its contract a second time by holding up payment until May 15, 1962 because of the defendant's alleged breach in refusal to give the guaranty, which we have held was no breach, and because the plaintiff allegedly did not know until then that the stone had met the Highway Department's specifications. Paragraph 6 of the contract did not make the plaintiff's monthly payments contingent on its *knowing* that the material met the specifications, but rather on the material's actually *meeting* the specifications. The defendant ought not to have had to wait for its payment until the plaintiff or the Highway Department got around to inspecting the material—a period of some 8 months after the last payment made by the plaintiff. The petition leaves unanswered the question of why the plaintiff made three payments without knowing whether or not the material would meet the specifications, then decided to suspend payments until it obtained this information. For a second time, however, the plaintiff's breach could be found to have been waived by the defendant by continuing to allow the plaintiff to haul away stone from the date of the plaintiff's last payment in 1961 (September 18) up through the middle of May 1962, a period of 8 months during which time the plaintiff did not make a single monthly payment as provided in the contract. If the defendant considered this to be a breach on the part of the plaintiff, its action in contin-

uing to do business as usual with the plaintiff, rather than refusing to do so and demanding payment in full up to the date it considered the breach to have occurred, could be found to be a waiver of that breach. The allegations of the petition, therefore, show that, in the final analysis, it was the defendant which breached the contract by the refusal to further stockpile stone in accordance with the contract after May 18, 1962, if it was adjudged to have waived the previous breaches by the plaintiff. The court therefore erred in sustaining the general demurrer of the defendant to the petition as amended, which set out a cause of action for breach of contract.

■ The defendant's cross action seeks to recover the sum of $1,246.88, allegedly due it as a result of the plaintiff's having deducted this amount, as its discount for monthly payment as provided by the contract, from the amount which was allegedly owed to the defendant since October 31, 1961, although the plaintiff did not make this payment until May 17, 1962. The original answer and cross action allege that the plaintiff's indebtedness as of October 31, 1961, was $12,179.48 *after taking the 5 cent per ton discount.* In its amended answer and cross action, however, the defendant alleges that it gave the plaintiff notice on December 18, 1961, that the plaintiff's account in the amount of $12,179.48 was past due since October 31st and constituted a breach of contract. The plaintiff, therefore, by its payment of $12,179.48 on May 15, 1962, paid the amount claimed by the defendant in its December 18th letter to be due it. Furthermore, the amended answer and cross action sets out a letter from the defendant's attorneys to the plaintiff, dated May 24, 1962, in which the plaintiff was advised that he owed $12,178.48 (the amount paid by the plaintiff) from October 31, 1961, to May 17, 1962, and that it was still indebted to the defendant in the amount of $1,246.88 for its invoice of January 1, 1962. Reference to this invoice, attached as an exhibit to the original answer and cross action, reveals that this sum is computed on the 5 cent per ton discount for the total amount of crushed stone (24,211.18 tons) which was supplied by the defendant during the year of 1961, as alleged by the petition. "When a creditor receives and retains a sum of money from his

debtor less than the amount actually due him with the understanding, either express or implied, that it is received by him in satisfaction of his claim or demand, he cannot thereafter treat it as a nullity and recover the balance, and this is so whether his claim or demand be disputed or undisputed, liquidated or unliquidated." *Rivers v. Cole Corp.*, 209 Ga. 406 (73 SE2d 196). Although the answer and cross action denies the allegations of paragraph 6 of the petition, it neither admits nor denies those of paragraph 6 as amended, in which the dates of the plaintiff's payments are alleged. Even if these dates were not alleged, however, the cross action shows on its face that the payments must have been made late, since the January 1, 1962, invoice, attached as an exhibit to and the basis for the cross action, is a claim for payment of the amount of the discount on the total amount of crushed stone alleged by the plaintiff to have been supplied by the defendant during the entire year of 1961. Under the ruling of the *Rivers* case, above, the defendant was estopped from claiming that the plaintiff was not entitled to the discount which it had been taking out all during the year with the implied approval of the defendant, which accepted these payments, especially in view of the fact that it had notified the plaintiff as late as December 18th that it owed an amount which allowed the discount. The court therefore erred in overruling the plaintiff's demurrer to the defendant's answer and cross action as amended.

*Judgments reversed. Jordan and Russell, JJ., concur.*